## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURA ANDREWS, | ) | Case No. 5:19-cv-01792 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Carmen E. Henderson |
| LECATS VENTRILOSCOPE LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

This case arises from Plaintiff Laura Andrews' employment with and termination from Defendant Lecats Ventriloscope LLC.  Plaintiff alleges that the company, its owners, and the sales director to whom she reported are liable under various federal and State wage laws, breach of contract, and State anti-discrimination law.  Defendants move for summary judgment (ECF No. 46) and to strike certain evidence on which Plaintiff relies.  (ECF No. 52.)  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** each motion.

### STATEMENT OF FACTS

Lecats Ventriloscope markets and sells a medical device known as the Ventriloscope.  Dr. Paul Lecat created the Ventriloscope and serves as Vice President of Lecats Ventriloscope.  (ECF No. 42-1, PageID #297.)  Defendant Frances Lecat serves as the chief executive officer of the company.  (ECF No. 40-1, PageID #189.)

From 2013 until her termination in 2019, Laura Andrews worked for Lecats Ventriloscope.  (ECF No. 43-1, PageID #334, 338.)  The gravamen of her complaint relates to the events surrounding her termination.  In essence, Plaintiff alleges that she was misclassified as an exempt employee, retaliated against for complaining about her entitlement to overtime compensation, and discriminated against on the basis of her age and sex.

### A.  Ms. Andrews' Employment with Lecats Ventriloscope

Lecats Ventriloscope hired Ms. Andrews in 2013.  (ECF No. 43-1, PageID #334.)  Initially, Ms. Andrews served as a sales representative and later as a sales manager.  (*Id.*; *see also* ECF No. 42-1, PageID #299.)  Throughout her time as sales manager, Lecats Ventriloscope classified Ms. Andrews as an exempt employee for the purposes of overtime compensation.  (ECF. No. 49-1, ¶ 14, PageID #432.)  Her compensation included a base salary plus 6.25% commissions on any sales she made.  (ECF No. 43-1, PageID #341.)

A few years after hiring Ms. Andrews, Lecats Ventriloscope hired James McCourtie as a consultant for the company's sales operations.  (ECF No. 41-1, PageID #258.)  To assist Mr. McCourtie in his review of the sales operations, Ms. Lecat asked each member of the sales team to prepare a job description outlining his or her job duties.  (ECF No. 43-1, PageID #335.)  According to Ms. Andrews' job description, her duties included:  coordinating training sessions with sales representatives; presenting sales strategies to Dr. and Ms. Lecat; developing advertising materials; hosting biweekly meetings with sales representatives; updating sales representatives' territories; communicating with potential clients to obtain sales; and

2

processing quotes and purchase orders.  (ECF No. 43-4, PageID #356–57.)  In addition, Ms. Andrews traveled to eight to ten trade shows per year on behalf of Lecats Ventriloscope.  (ECF No. 43-1, PageID #335.)  She also coordinated vendor conferences for the sales team to attend.  (*Id.*; *see also* ECF No. 43-4, PageID #356.)

Later, Mr. McCourtie served as sales director for Lecats Ventriloscope.  (ECF No. 42-1, PageID #300; ECF No. 43-1, PageID #343.)  At that time, Ms. Andrews' job duties slightly changed.  (ECF No. 43-1, PageID #343.)  Ms. Andrews reported to Mr. McCourtie, and she was no longer responsible for conducting training sessions and processing quotes.  (*Id.*)  Toward the end of her employment, Ms. Andrews prepared a résumé that reflected these changes.  (ECF No. 43-5, PageID #360–01.)  According to Ms. Andrews, 75% of her time at work related to sales.  (ECF No. 49-1, ¶ 7 PageID #431.)

## B. Ms. Andrews' Termination

In January 2019, Dr. Lecat, Ms. Lecat, and Mr. McCourtie met with Ms. Andrews to discuss performance-related issues.  (ECF No. 43-1, PageID #338.)  They met a second time in February 2019 to discuss Ms. Andrews' progress.  (*Id.*)  At the second meeting in February 2019, Defendants criticized Ms. Andrews for failing correctly to submit expense reports and weekly sales activity reports.  (*Id.*)  Then, Dr. Lecats, Ms. Lecats, and Mr. McCourtie decided to meet with Ms. Andrews and terminate her employment with Lecats Ventriloscope.  (ECF No. 41-1, PageID #267.)  Before the meeting, however, Ms. Andrews submitted a vacation request for July 24–27, 2019.  (*Id.*)  Mr. McCourtie then set the termination meeting for July 24, before Ms. Andrews started her vacation.  (*Id.*)  Before the termination meeting, on

July 22, 2019, Ms. Andrews submitted a formal complaint to Lecats Ventriloscope regarding her entitlement to overtime compensation and unpaid commissions.  (ECF No. 43-3, PageID #352.)  Despite the complaint, Lecats Ventriloscope moved forward with Ms. Andrews' termination meeting.  Ms. Andrews' employment with Lecats Ventriloscope ended on July 24, 2019.  (ECF No. 43-1, PageID #338.)

## STATEMENT OF THE CASE

Following Plaintiff's termination, she filed suit asserting causes of action for (1) misclassification and retaliation under the Fair Labor Standards Act; (2) violation of the Equal Pay Act; (3) violation of the Ohio Prompt Pay Act; (4) breach of contract; and (5) age or gender discrimination under State law.  (ECF No. 1.)  Plaintiff named as Defendants Lecats Ventriloscope, Dr. Lecat, Ms. Lecat, and Mr. McCourtie.  Defendants move for summary judgment.  (ECF No. 46.)

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party.  *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party

will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.* However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). In determining whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## I.     Motion to Strike

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.  Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter."  *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249).  A district court examines only "disputes over facts that might affect the outcome of the suit under governing law."  *Anderson*, 477 U.S. at 248.  "It is well settled that only admissible evidence may be considered by the trial court ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994).

"Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions." *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005). "[S]uch an approach makes sense given that a court cannot determine the scope of the materials properly before it without first ruling on any pending evidentiary . . . motions."  *Id.*

### I.A.   Procedural Considerations

As a threshold matter, a motion to strike is not the proper vehicle for objecting to evidence at the summary-judgment stage.  Under Rule 12(f), which applies at the

pleading stage, not on summary judgment, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  On the face of the Rule, it does not procedurally apply at the summary-judgment stage.  Nor does the evidence to which Defendants direct their motion present "redundant, immaterial, impertinent, or scandalous matter" subject to striking under Rule 12(f).  *See Stephenson v. Family Sols. of Ohio, Inc.*, No. 1:18CV2017, 2021 WL 795551, at *5 (N.D. Ohio Mar. 2, 2021) (noting that "a 'motion to strike' applies only to pleadings").

Rule 56(c)(2) governs objections to the admissibility of evidence offered to support a factual assertion in a motion for summary judgment.  Under this Rule, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Rather than striking the evidence from the record, the Court construes Defendants' motion to strike as objections under Rule 56(c)(2) and will disregard any inadmissible portions of the evidence at issue.  *Stephenson,* 2021 WL 795551, at *5 ("If, in evaluating an objection under Rule 56(c)(2), a court is presented with inadmissible evidence, it should disregard the evidence rather than striking it from the record.") (cleaned up).

### I.B.  Sham Affidavit Rule

On summary judgment, Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Under this Rule, "a party may not create a factual issue by filing an affidavit, after a motion for summary

judgment has been made, which contradicts her earlier deposition testimony." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021) (quoting *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). In determining a declaration's admissibility at summary judgment, the district court must first consider "whether the [declaration] 'directly contradicts the nonmoving party's prior sworn testimony,'" and, "[i]f so, absent a persuasive justification for the contradiction, the court should not consider the [declaration]." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (quoting *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 905 (6th Cir. 2006)).

Further, Sixth Circuit precedent suggests "a relatively narrow definition of contradiction." *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (citing *Aerel, S.R.L.*, 448 F.3d at 907). If a party "was not directly questioned about an issue," a later declaration on that issue simply "fills a gap left open by the moving party." *Aerel, S.R.L.*, 448 F.3d at 907. "After all, deponents have no obligation to volunteer information the questioner fails to seek." *Reich*, 945 F.3d at 976. Where a deponent is "asked specific questions about, yet denie[s] knowledge of, the material aspects of her case, the material allegations in her affidavit directly contradict her deposition." *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013)

"If the affidavit does not directly contradict prior sworn testimony, it should be stricken if it is 'an attempt to create a sham fact issue.'" *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (quoting *Aerel, S.R.L.*, 448 F.3d at 908–09). In determining whether an affidavit is attempting to create a sham issue of fact, courts consider the

8

following factors: (1) "whether the affiant was cross-examined during his earlier testimony," (2) "whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence," and (3) "whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Aerel, S.R.L.*, 448 F.3d at 909 (cleaned up).

### I.C. Evidence at Issue

Defendants seek to strike certain paragraphs of the declaration Plaintiff filed in support of her response to Defendants' motion for summary judgment. Specifically, Defendants move to strike Paragraphs 7, 8, 9, 10, and 13 on the ground that those paragraphs directly contradict Plaintiff's deposition testimony and, therefore, are inadmissible.

### I.C.1. Statements Relating to Plaintiff's Primary Duties

In Paragraph 7, Defendants object to the statements in Plaintiff's declaration relating to Ms. Andrews' primary duties as sales manager. (ECF No. 52, PageID #504.) Defendants argue that Paragraph 7 directly contradicts Ms. Andrews' testimony because she did not list her primary duties on her résumé. (*Id.*; PageID #504–05.)

The Court declines Defendants' invitation to disregard the statements made in Paragraph 7 because they do not directly contradict Plaintiff's deposition testimony. As noted, if a party "was not directly questioned about an issue," a later affidavit on that issue simply "fills a gap left open by the moving party." *Aerel, S.R.L.*, 448 F.3d at 907. Here, Defendants do not direct the Court to any specific deposition testimony where Defendants directly questioned Ms. Andrews about her primary duties as sales

manager or the amount of time she spent performing various tasks. Moreover, reliance on a failure to list those specific duties on a résumé provides a shallow foundation on which to build an argument for exclusion. Because the statements in Paragraph 7 do not create a sham issue of fact under Rule 56, the Court overrules Defendants' objection.

### I.C.2. Plaintiff's Authority over Other Employees

In Paragraphs 8 through 10, Defendants object to the statements relating to Plaintiff's authority (or lack thereof) to hire, fire, promote, or change the status of employees at Lecats Ventriloscope. (ECF No. 52, PageID #505–06.) These paragraphs, however, do not directly contradict Plaintiff's deposition testimony. Plaintiff testified that she participated in a process to provide surveys on other employees and that every employee participated in the survey. (ECF No. 43-1, PageID #344.) Moreover, Plaintiff testified that she neither provided employees with verbal or written warnings nor recommended that Lecats Ventriloscope should terminate any employees. (*Id.*) Therefore, the Court overrules Defendants' objections to Paragraphs 8 through 10.

### I.C.3. Plaintiff's Authority to Supervise Other Employees

In Paragraph 13, Defendants object to the statements regarding Plaintiff's management of the sales team. (ECF No. 52, PageID #506.) Specifically, Defendants take issue with the statements in Paragraph 13 stating that Ms. Andrews "did not regularly provide direction or supervision to any Lecat's [*sic*] employee." (ECF No. 49-1, PageID #432.) That portion of Paragraph 13 directly contradicts Plaintiff's deposition testimony. The deposition testimony demonstrates that counsel for

10

Defendants asked Ms. Andrews numerous times whether she directed the work of other employees. She repeatedly answered, "Yes." (*See id.*, PageID #336–37.) Accordingly, the Court sustains this objection and will disregard the statements in Paragraph 13 relating to Plaintiff's authority to direct or supervise other employees.

## II.  Defendants' Motion for Summary Judgment

Defendants seek a summary judgment that each of Plaintiff's claims fails as a matter of law. (ECF No. 46.)

### II.A.  Plaintiff's Federal Claims

#### II.A.1. Plaintiff's Wage Claims (Count 1)

Plaintiff alleges that Defendants failed to pay her overtime compensation under the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act. The Ohio statute parallels the FLSA and, therefore, the Court will analyze both claims together under the same framework. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997) (interpreting both statutes "in a unitary fashion" because they parallel each other). "Because the FLSA and the [Ohio statute] have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016).

Under the FLSA, an employer must pay its employees overtime compensation of at least one and one-half times the regular rate of pay for any hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1). The Act's overtime compensation requirement, however, does not apply with respect to all employees.

11

*See id.* § 213.  As relevant here, the statute exempts individuals "employed in a bona fide executive [or] administrative" capacity.  *Id.* § 213(a)(1).

The employer bears the burden of establishing that an employee is exempted under the Act.  *Secretary of Labor v. Timberline S., LLC*, 925 F.3d 838, 850 (6th Cir. 2019) (citing *Martin v. Indiana Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004)). And the Court gives the FLSA exemptions "a fair, rather than narrow, reading."  *Id.* at 850 (citing *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Defendants argue that Plaintiff is exempt from the overtime provisions of the FLSA under two exemptions:  the administrative exemption and the executive exemption.  (ECF No. 46, PageID #408.)

### II.A.1.a. Administrative Exemption

Under the FLSA, an exempt administrative employee is an employee:  (1) who is compensated on a salary or fee basis of at least $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.   29 C.F.R. §§ 541.200(a)(1)–(3).

With respect to the first element, the parties agree, and the record shows that Plaintiff was compensated on a salary basis that qualifies her for the administrative exemption.  (*See* ECF No. 50, PageID #463; ECF No. 51, PageID #481.)  The parties dispute whether Plaintiff's job duties qualify under the second and third elements.

12

"Under each of these two [elements], the employee's 'primary duty' is the focus." *Burton v. Appriss, Inc.*, 682 F. App'x. 423, 427 (6th Cir. 2017). An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). While "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee," time alone "is not the sole test." *Id.* § 541.700(b). Indeed, the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.; see also Burton*, 682 F. App'x. at 427.

### II.A.1.a.i. Management/General Business Operations

An employee's primary duty "directly relate[s] to the management or general business operations of the employer or the employer's customers," where the employee "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

Defendants rely heavily on the Seventh Circuit's holding in *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012). There, the Seventh Circuit concluded that pharmaceutical sales representatives satisfied the "directly related" element of the administrative exemption even though they were involved with sales. *Id.* at 577. The court reasoned that the pharmaceutical sales representatives "neither produce the employers' products nor generate specific sales, but service the production and

13

sales aspects of the business by communicating the employers' message to physicians." *Id.* at 576–77.

*Shaefer-Larose* is not binding precedent, but its reasoning is persuasive. As with the sales representatives in *Schaefer-LaRose*, Ms. Andrews' primary duty was to work with the sales team and promote the sales of Lecats Ventriloscope's products. (*See* ECF No. 43-5, PageID #360; ECF No. 43-6, PageID #362.)  In doing so, Ms. Andrews "contact[ed] sales leads, obtain[ed] new sales leads," and met "with the sales team to brainstorm and discuss sales strategies and tasks." (ECF No. 49-1, ¶ 7, PageID #431.)  Indeed, Ms. Andrews conducted training sessions with the sales team, assisted in developing sales and marketing tools, and created sales reports and projection reports.  (ECF No. 43-4, PageID #356; ECF No. 43-5, PageID #360–61.)  In addition, Ms. Andrews traveled to 8 to 10 trade shows per year on behalf of Lecats Ventriloscope.  (ECF No. 43-1, PageID #335.)

Although Ms. Andrews also conducted sales, the Court must analyze her job duties as a whole. *Burton v. Appriss, Inc.*, 682 F. App'x 423, 427 (6th Cir. 2017).  The undisputed facts show that Ms. Andrews' primary duties can be properly understood as promoting sales of Lecats Ventriloscope's products—work directly related to the management or general business operations of Lecats Ventriloscope.  Therefore, the record before the Court shows that there is no genuine dispute of fact as to the second element of the administrative exemption.

### II.A.1.a.ii. Discretion and Independent Judgment

Defendants must also prove that the employee's primary duty "includes the exercise of discretion and independent judgment with respect to matters of

significance."  29 C.F.R. § 51.200(a)(3).  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id.* § 541.202(a).  The term "matters of significance" relates to the "level of importance or consequences" of the employee's work.  *Id.*

Defendants argue that Plaintiff's résumé and job description support a determination that her primary duties involved the exercise of discretion and independent judgment with respect to matters of significance.  According to Plaintiff's résumé, she attended trade shows and determined the trade shows other employees on the sales team attended.  (ECF No. 43-5, PageID #361.)  And according to Plaintiff's job description, her responsibilities included contacting past and present clients to inform them of new products, assisting the sales team to develop sales strategies, and updating sales representatives' territories.  (ECF No. 43-4, PageID #356–57.)

Given Ms. Andrews' responsibilities as reflected on her résumé and in her job description, there is no genuine issue of material fact that she used discretion and independent judgment in matters of significance.  Similarly, in *Burton v. Appriss, Inc.*, 682 F. App'x 423, 430 (6th Cir. 2017), the employee satisfied the third element of the administrative exemption because she was "expected and required, with minimal supervision, to exercise discretion and independent judgment as a leader in taking initiative in, among other things, evaluating existing relationships."  For these reasons, the Court concludes that Defendants have met their burden in

15

demonstrating that Plaintiff qualifies for the administrative exemption under the third element.

*   *   *

Accordingly, Plaintiff is a "bona fide administrative employee" that is exempt from the overtime requirements of the FLSA. *See* 29 U.S.C. § 213(a)(1). The Court therefore **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's FLSA wage claims (Count One).

### II.A.1.b. Executive Exemption

Defendants also argue that summary judgment is appropriate on the basis of the executive exemption. Because the Court concludes that Plaintiff falls within the administrative exemption, thereby awarding summary judgment to Defendants, it need not address the parties' arguments regarding the applicability of the executive exemption.

### II.A.2. Plaintiff's FLSA Retaliation Claim (Count 2)

Plaintiff alleges that Defendants retaliated against her for engaging in protected activity under the FLSA. (ECF No. 50, PageID #468.) The FLSA's anti-retaliation provision provides that it "shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3).

To establish a claim for retaliation under the FLSA, a plaintiff must establish (1) participation in protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) the employer took an employment action adverse to her; and (4) a causal connection between the protective activity and the adverse

16

employment action. *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). If a plaintiff successfully establishes a prima facie case of retaliation, the burden shifts to the defendant to "to set forth a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 489 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." *Adair*, 452 F.3d at 489 (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)).

Here, Plaintiff made a complaint regarding her status as an exempt employee; two days later, Defendants terminated her employment. (ECF No. 43-1, PageID #338; ECF No. 43-3, PageID #352.) However, Plaintiff fails to direct the Court to any other evidence showing a causal connection between her complaint and the adverse action. While closeness in time between the protected activity and the adverse action is strong evidence, "temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir.2010); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (explaining that temporal proximity generally will not support an inference of discrimination if there is no other compelling evidence).

Moreover, Defendants point to evidence, which Plaintiff does not rebut, showing that the decision to terminate Ms. Andrews' employment occurred *before* she submitted her FLSA complaint. (ECF No. 40-1, PageID # 224, ECF No. 41-1,

17

PageID #267.) In such circumstances, the record does not present a genuine dispute of material fact about the cause of adverse employment action. *See Reynolds v. Extendicare Health Servs., Inc.*, 257 F. App'x. 914, 920 (6th Cir. 2007) ("[I]t is not appropriate to view placing [Plaintiff] on the PIP as being causally related to her filing of the complaint because the PIP decision had been made prior to the protected action."). Simply put, Plaintiff's failure to adduce evidence other than the temporal proximity between her complaint and the adverse action is fatal to her FLSA retaliation claim. Viewing the evidence in the light most favorable to Plaintiff, as required at the summary judgment stage, the Court concludes that she cannot establish the causal connection necessary for her *prima facie* case. Therefore, the Court **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's FLSA retaliation claim (Count Two).

### II.A.3. Plaintiff's Equal Pay Act Claim (Count 6)

The Equal Pay Act seeks to remedy pay disparities on the basis of sex. It prohibits an employer from discriminating:

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). To establish a *prima facie* case under the Equal Pay Act, a plaintiff must demonstrate that an employer pays members of the opposite sex more for work that requires equal skill, effort, and responsibility. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 987

(6th Cir. 1992). Under the Act, jobs need not be identical, but there must be "substantial equality of skill, effort, responsibility, and working conditions." *Harrison-Pepper v. Miami Univ.*, 246 F. Supp. 2d 854, 860 (S.D. Ohio 2003).

Once the plaintiff establishes a *prima facie* case, the defendant must prove by a preponderance of the evidence that the wage differential is justified under one of the four defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality; or (4) any factor other than sex. 29 U.S.C. § 206(d)(1). "An employer is entitled to summary judgment on one of the affirmative defenses only if the record shows that [it] established the defense so clearly that no rational jury could have found to the contrary." *Foco v. Freudenberg-NOK Gen. P'ship*, 549 F. App'x 340, 344 (6th Cir. 2013) (cleaned up).

Here, the undisputed evidence shows that Lecats Ventriloscope hired a man in the sales manager position, who earned a substantially higher salary than Plaintiff. (*See* ECF No. 40-1, PageID #216; ECF No. 43-1, PageID #343.) Defendants attribute the salary differential to factors other than sex, namely the experience of the successor to Ms. Andrews and the fact that he was hired with the promise and expectation of promotion to the position of chief operating officer. But the record provides scarcely any detail to support this argument. Ms. Lecat testified merely that he was hired with the expectation that he would become the chief operating officer. (ECF No. 40-1, PageID #216.) So did Dr. Lecat: "He was brought in with the intention of making him chief operating officer. . . . We brought him in as sales manager." (ECF No. 42-1, PageID #309–10.) The testimony of Mr. McCourtie adds only that

19

Ms. Andrews' successor as sales manager "had other aspects, other skills that he brought along with him." (ECF No. 41-1, PageID #261.) This evidence fails to establish a defense under the statute so clearly that a jury could only rule in Defendants' favor. A reasonable jury might so find, but could also determine that Defendants replaced Ms. Andrews with a man at a higher salary for performing substantially similar work. Defendants have not carried their burden on summary judgment.

In reply, Defendants advance another argument for summary judgment. They argue that Plaintiff cannot maintain a *prima facie* case for violation of the Equal Pay Act because she failed to show that Lecats Ventriloscope paid her lower wages than the male sales manager. (ECF No. 51, PageID #489.) Specifically, Defendants argue that Plaintiff earned a commission in addition to her salary; whereas, the male sales manager earned only a salary. (*Id.*) But the Court will not entertain an argument made for the first time in reply. *See ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 584 (6th Cir. 2018) (citations omitted). To the extent Defendants attempt to imply an argument in their opening brief, they do so only in a one-sentence footnote without citation to authority or development of any legal argument. (ECF No. 46, PageID #417 n.4.) This too fails to present the issue properly for the Court's consideration. *See Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x 601, 612 n.2 (6th Cir. 2013) ("Generally, an argument raised in a footnote without further development is deemed waived.").

For these reasons, the Court **DENIES** Defendants' motion for summary judgment with respect to Plaintiff's Equal Pay Act claim (Count Six).

### II.A.4. Individual Liability Under the FLSA and Equal Pay Act

To establish claims against the individual Defendants under the FLSA and the Equal Pay Act, Plaintiff must establish that they were employers. 29 U.S.C. § 216(b). An employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). Because Defendants are entitled to summary judgment on Plaintiff's claims under the FLSA, the Court need not consider that statute further. But the Equal Pay Act uses the same definitions. *See Dixon v. University of Toledo*, 638 F. Supp. 2d 847, 854 (N.D. Ohio 2009) (citing 29 U.S.C. § 206). Under the law of this Circuit, "the 'economic reality' of the relationship between a plaintiff and a defendant determines whether their relationship is one of employment." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012) (cleaned up). This economic-reality test presents a classic multi-factor facts-and-circumstances analysis.

Without question, individuals may have liability as employers where a plaintiff formally works for an entity—that is, a separate legal person. Plaintiff makes no argument that Mr. McCourtie is liable as an employer. With respect to Dr. Lecat and Ms. Lecat, Plaintiff points to evidence in the record that each is involved in the day-to-day management of Lecats Ventriloscope, has the authority to hire and fire, and established the terms and conditions of Ms. Andrews' employment. (*See* ECF No. 40-1, PageID #189–90, 211; ECF No. 43-1, PageID #334.) Although status as a high-level employee alone does not make one an employer, Plaintiff presents sufficient

evidence from which a reasonable finder of fact might determine that Dr. Lecat, Ms. Lecat, or both had an employment relationship with Ms. Andrews under the economic-reality test. Therefore, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims for individual liability against Mr. McCourtie, but **DENIES** Defendants' motion for summary judgment on Plaintiff's claims for individual liability against Dr. Lecat and Ms. Lecat under the Equal Pay Act.

### II.B.  Plaintiff's State-Law Claims

Plaintiff asserts three claims under State law:  one under the Ohio Prompt Pay Act; one for breach of contract or, alternatively, promissory estoppel; and a claim for age and gender discrimination.

### II.B.1. Ohio Prompt Payment Act (Count 3)

Defendants fail to address Plaintiff's claim regarding their violation of the Ohio Prompt Payment Act. Therefore, Defendants are not entitled to judgment as a matter of law on Plaintiff's Ohio Prompt Payment Act claim (Count Three).

### II.B.2. Breach of Contract (Count 4)

Plaintiff asserts that Defendants breached her employment contract by failing to pay commissions owed to her at the time of her termination. (ECF No. 50, PageID #471.) To establish a breach of contract claim under Ohio law, a plaintiff must show that (1) a contract existed; (2) the plaintiff performed her obligations under the contract; (3) the defendants breached the contract; and (4) the plaintiff suffered damages as the result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

Defendants do not dispute, and the record confirms, that Plaintiff had a contract with Lecats Ventriloscope with respect to commissions.  (ECF No. 40-1, PageID #216; ECF No. 43-1, PageID #341.)  Further, the record shows that one commission, of about $600, is at issue between the parties.  (ECF No. 40-1, PageID #211.)  In this case, equipment from one sale was returned with damage, and no employee received a commission.  (*Id.*)  Plaintiff points to no other evidence establishing the terms of the contract for payment of commissions or establishing her entitlement to a commission on the sale at issue.  Therefore, she has failed to carry her burden on summary judgment that Defendants committed a breach of contract, and the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's breach of contract claim (Count Four).

### II.B.3. Promissory Estoppel (Count 5)

In the alternative to breach of contract, Plaintiff brings a claim for promissory estoppel (Count 5).  Both claims seek the same relief and have the same factual basis.  To establish a claim for promissory estoppel, a plaintiff must show that (1) the defendant made a clear, unambiguous promise; (2) the plaintiff relied on that promise; (3) the reliance was justifiable; and (4) the reliance caused detriment to the plaintiff.  *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 585 (6th Cir. 2012).  Here, the facts show that Ms. Andrews did not receive the commission at issue because of damage to the equipment.  Again, Plaintiff points to no contrary evidence.  Therefore, there is no genuine dispute of material fact with respect to causation (the fourth element).  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's promissory estoppel claim (Count Five).

## II.B.4. Age and Gender Discrimination Claim (Count 7)

Plaintiff's complaint alleges a claim of age or gender discrimination under Chapter 4112 of the Ohio Revised Code.  Because the requirements under this statute mirror those of federal law, courts "generally apply federal precedent to employment discrimination claims under Ohio law."  *Sarvak v. Urban Retail Props., LLC*, 524 F. App'x 229, 233 (6th Cir. 2013).

To demonstrate impermissible discrimination, a plaintiff may put forward direct evidence or rely instead on inferential or circumstantial evidence.  In this case, Plaintiff takes the latter approach.  Where a claim builds on circumstantial evidence, courts use the familiar three-step *McDonnell Douglas* burden-shifting framework to determine the propriety of summary judgment.  *See Hunter v. General Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005)); *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 843 (6th Cir. 2015).  *First*, the plaintiff must establish a prima facie case of discrimination.  *Second*, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Third*, the plaintiff must demonstrate the stated justification is a pretext for unlawful discrimination. *Gunn*, 632 F. App'x at 843.

### II.B.4.a. Prima Facie Case

Under the *McDonnell Douglas* framework, the plaintiff establishes a *prima facie* case by demonstrating that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was

24

treated differently than similarly-situated, non-protected employees." *Briggs v. University of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (cleaned up).

Defendants challenge the fourth element Plaintiff's *prima facie* case on the ground that Plaintiff fails to identify a similarly situated employee who was treated differently. (ECF No. 51, PageID #493.) Defendants, however, ignore the second part of the fourth element—that Plaintiff was replaced by someone outside her protected class. *See Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (holding that a plaintiff "could satisfy the fourth element of her age discrimination claim . . . by providing evidence that she was replaced by a younger worker"); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 253 (6th Cir. 1998) (holding that a plaintiff failed to establish the fourth element because she did not provide evidence to support her claim that her former employer initially intended to replace her with a man). Plaintiff meets this element, with respect to both age and sex discrimination, because Lecats Ventriloscope replaced her with a man who was substantially younger than her. (ECF No. 43-1, PageID #347–48; ECF No. 49-1, ¶ 3, Page ID #431.) In addition, the record leaves no room for doubt that Plaintiff satisfies the remaining elements to establish her *prima facie* case.

### II.B.4.b. Legitimate Reason for Termination and Pretext

Defendants base Plaintiff's termination on poor performance and insubordination. (ECF No. 46, PageID #422.) "Employee misconduct and poor performance are legitimate reasons for an adverse-employment action." *Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)). Therefore, Plaintiff has the burden

25

to prove by a preponderance of the evidence that Defendants' reason is merely a pretext for age or gender discrimination. *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 843 (6th Cir. 2015).

"[I]n evaluating pretext and the plaintiff's ultimate burden, the court should consider all probative evidence in the light most favorable to the plaintiff." *Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  "A plaintiff meets her burden to show pretext by producing sufficient evidence from which the jury may reasonably reject the employer's explanation." *Myers v. U.S. Cellular Corp.*, 257 F. App'x 947, 954 (6th Cir. 2007) (cleaned up).  In other words, "the plaintiff must introduce admissible evidence to show that the proffered reason was not the true reason and that discriminatory animus was the true motivation driving the employer's decision." *Id.* (cleaned up).

A plaintiff can show pretext in three interrelated ways by demonstrating that an employer's proffered reason for firing her:  (1) has no basis in fact; (2) did not actually motivate the employer's actions; or (3) was insufficient to motivate the employer's actions. *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

Here, Plaintiff asserts that Defendants' proffered reason for her termination has no basis in fact.  (ECF No. 50, PageID #471.)  Specifically, Plaintiff argues that Defendants did not apprise her of the reasons for her termination at the time the action took place.  (*Id.*)  Further, she argues that Defendants conducted a pretextual

investigation after she commenced her lawsuit to supply a sufficient basis for her termination. (*Id.*) Defendants do not respond to Plaintiff's assertions of a pretextual investigation in any meaningful way. Certainly, an after-the-fact (or, in this case, an after-the-lawsuit) investigation provides at least some evidence of pretext. And the record fails to establish a precise reason for Defendants' decision to terminate Ms. Andrews. Without question, poor performance along with misconduct may be a legitimate reason for termination. *See Harper*, 781 F. App'x at 396. However, the record leaves room for doubt that poor performance was the reason for Plaintiff's termination. Ultimately, a finder of fact might agree that Defendants terminated Ms. Andrews for poor performance. But the record also permits a reasonable jury to second guess that proffered rationale for Ms. Andrews' termination. In the end, the question of pretext on this record presents a question of fact for the jury to resolve. Therefore, the Court **DENIES** Defendants' motion for summary judgment with respect to Plaintiff's discrimination claim (Count VII).

## CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to strike, which it construes as objections to certain evidence in the summary-judgment record. (ECF No. 52.) The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment. (ECF No. 46.) Specifically, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims under the Fair Labor Standards Act (and analogous Ohio law) (Count 1); Plaintiff's FLSA retaliation claim (Count 2); and Plaintiff's claims for

breach of contract (Count 4) and promissory estoppel (Count 5).  The Court **DENIES** Defendant's motion for summary judgment on Plaintiff's claim under Ohio's Prompt Payment Act (Count 3); under the Equal Pay Act (Count 6); and for age and sex discrimination under State law (Count 7).

Further, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims for individual liability against Mr. McCourtie; and **DENIES** Defendants' motion for summary judgment on Plaintiff's claims for individual liability against Dr. Lecat and Ms. Lecat under the Equal Pay Act.

**SO ORDERED.**

Dated:  March 9, 2022

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

28